## NAYLOR vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*December 1 — December 13, 1881.*

MASTER AND SERVANT. *When servant takes hazards of business.*

1. If a servant, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he cannot maintain an action against the master for such injury merely on the ground that there was a safer mode for conducting the business, the adoption of which would have prevented the injury.

2. The undisputed evidence in this case showing that the plaintiff, before and at the time of receiving the injury complained of (from the falling of a bank of earth under which he was excavating gravel for defendant), was fully informed of the peril to himself of the service in which he was engaged, and voluntarily remained in the dangerous position which he was occupying, there was no error in rendering a judgment of nonsuit.

APPEAL from the Circuit Court for *Sauk* County.

The plaintiff was in the service of the defendant company, working, with many others, in a gravel-pit a short distance from Baraboo. His business was to shovel gravel and earth upon cars which were backed into the pit. He was so employed about three months in the summer and fall of 1879. In October or November of that year, while he was so at work, a bank of earth under which he was excavating fell upon him and seriously injured him. This action was brought to recover damages for the injury. The alleged ground of action is, that the defendant was negligent in putting the plaintiff at work in a dangerous place without apprising him of the danger, and in not using reasonable and proper precautions to remove the danger. The gravel train upon which the plaintiff was shoveling earth was in charge of one Brown, who also superintended the work. Brown directed the plaintiff where to work, and he worked there two or three hours, and until the bank fell. At the time it fell, an excavation two or three feet deep had been dug under it, partly by the plaintiff. Several of the men at work in the gravel-pit regarded the place where plaintiff was at work as dangerous, and left or avoided it. Twenty or thirty minutes before the bank fell, Brown came along on the cars and said to the plaintiff and others: "Be careful, boys; it don't look safe." The plaintiff heard this caution, but did not change his position, or, so far as appears, pay any attention to it.

The stratum of gravel from which the cars were being loaded, was about five feet deep, and above that was a high bank of earth sloping from the pit. The ground was frozen a few

inches in depth.   The body of earth which fell was about the length of a car.   It extended from the excavation upwards about ten feet, and was two or three feet thick.   On the trial, the court sustained objections to the following questions to witnesses, propounded on behalf of the plaintiff: "How much labor would it have been to have gone up and pried that bank off ?   Was there anything in the character of that bank, or its surroundings, to prevent its being pried off ?   Is it, or is it not, the usual practice of the boss to keep the overhanging bank cut down so as not to be dangerous?   What do you do when the bank is dug under so as to overhang?   What do they do, in such cases, to protect the men?"   Similar questions as to what course Brown's predecessor, one Hallet, pursued when the bank was in that condition, were also ruled out on objection.   At the close of the plaintiff's testimony the court ordered judgment of nonsuit, which was duly entered. The plaintiff appealed from the judgment.

For the appellant there was a brief by *Barker & Barlow*, his attorneys, with *J. W. Lusk*, of counsel, and oral argument by *Mr. Lusk.*   They cited 34 Iowa, 153; 35 N. Y., 40; *Dorsey v. Construction Co.*, 42 Wis., 598; *Smith v. C., M. & St. P. R'y Co.*, id., 526; *Wedgwood v. C. & N. W. R'y Co.*, 41 id., 478; *Baker v. R. R. Co.*, 20 Am. Law Reg., N. S., 724; *Thomas v. W. U. Tel. Co.*, 100 Mass., 156; *Snow v. Housatonic R. R. Co.*, 8 Allen, 441; *Britton v. Great West. Cotton Co.*, L. R., 7 Exch., 130; 36 N. Y., 136; *McIntyre v. N. Y. Cent. R. R.*, 37 id., 287; 49 id., 47;  59 id., 351;  68 id., 124; *Hough v. R'y*, 100 U. S., 224; *Gibson v. R. R.*, 2 Am., 500; *Kavanaugh v. Janesville*, 24 Wis., 618; *Kelley v. Fond du Lac*, 31 id., 179; *Kenworthy v. Ironton*, 41 id., 651.

*Wm. F. Vilas*, for the respondent, cited *Sullivan v. The India Manuf. Co.*, 113 Mass., 398; *Dorsey v. Construction Co.*, 42 Wis., 598; *Dillon v. U. P. R. R. Co.*, 3 Dillon, 319, and cases there cited; *Davis v. D. & M. R. R. Co.*, 20 Mich., 105, 127 et seq.; *R. R. Co. v. Gildersleeve*, 33 id., 133, 135;

*Woodley v. Met. Dist. R'y Co.*, L. R., 2 Exch. Div., 384, 388; *Assop v. Yates*, 2 Hurlst. & N., 768; *Griffiths v. Gidlow*, 3 id., 648; *Priestley v. Fowler*, 3 M. & W., 1, 5–7; Cooley on Torts, 551–2; *Haskin v. N. Y. Cent., etc., R. R. Co.*, 65 Barb., 134; *Skipp v. Eastern Co. R. R. Co.*, 9 Exch., 223; *C. & N. W. R'y Co. v. Donahue*, 75 Ill., 106; *R. R. Co. v. Black*, 88 Ill., 112; *Gibson v. R'y Co.*, 63 N. Y., 449; *Lovejoy v. B. & L. R. R.*, 125 Mass., 79, 82; *Muldowney v. Ill. Cent. R. R. Co.*, 36 Iowa, 470; *Way v. Ill. Cent. R. R. Co.*, 40 id., 343–4; *Fifield v. Northern R. R.*, 42 N. H., 240; *Thayer v. R. R. Co.*, 22 Ind., 26, 30; *McGlynn v. Brodie*, 31 Cal., 376; *Devitt v. Pacific R. R.*, 50 Mo., 305.

Lyon, J.    Undoubtedly the general rule of law is, that the implied contract between master and servant requires the master to provide suitable means, appliances and instrumentalities to enable the servant to do his work as safely as the necessary hazards of the employment will permit.    It is well settled, however, that the master may conduct his business in his own way, although another method might be less hazardous; and the servant takes the risk of the more hazardous method as well, if he knows the danger attending the business in the manner in which it is conducted.    Hence, if a servant, knowing the hazards of his employment as the business is conducted, is injured while employed in such business, he cannot maintain an action against the master for such injury merely because he may be able to show that there was a safer mode in which the business might have been conducted, and that had it been conducted in that mode he would not have been injured.    Many cases affirming these principles are cited in the brief of counsel for defendant.    See also *Ladd v. Railroad Co.*, 119 Mass., 412; *Clark v. Railroad Co.* (Minn.), 2 Am. & Eng. Railroad Cas., 240, and cases cited.

Cases apparently within this rule sometimes arise, which, by reason of some special circumstance peculiar to the case, are

Naylor vs. The Chicago & Northwestern R'y Co.

taken out of it, and are to be decided únder the general rule first above stated. For example, the servant may know the machinery he is using is defective, but may not know that the defect exposes him to peril. Many of the cases cited by the learned counsel for the plaintiff belong to this class. It is believed that none of them assert a rule in conflict with that laid down in the cases above cited. Applied to this case, the law is, that if the plaintiff, when at work in the gravel bank on the day he was injured, fully knew the hazards of the work — if he knew that he was at work in a dangerous place, and that the bank of earth above was liable to fall upon him,— he cannot recover in this action. In that case it is quite immaterial that the work might have been made safe by detaching earth from the bank above him, or in any other manner. Having such knowledge, his implied contract was that he assumed the hazards of the employment incident to the business as it was conducted. To quote the language of Devens, J., in *Sullivan v. India Manuf'g Co.*, 113 Mass., 396: "When the servant assents to occupy the place prepared for him, and incur the dangers to which he will be exposed thereby, having sufficient intelligence and knowledge to enable him to comprehend them, it is not a question whether such place might, with reasonable care and by a reasonable expense, have been made safe. His assent has dispensed with the performance, on the part of the master, of the duty to make it so. Having consented to serve in the way and manner in which the business was being conducted, he has no proper ground of complaint, even if reasonable precautions have been neglected."

*Strahlendorf v. Rosenthal*, 30 Wis., 674, will serve to illustrate this rule.. In that case the plaintiff, the servant, was injured while working in the bottom of a deep shaft, which had been curbed to within twelve feet of the bottom. He was injured by the falling of a quantity of earth upon him from the side of the shaft below the curb. The defendant, the master, knew that there was a crack in the side of the shaft at the

place from which the earth fell, which indicated that it was liable to fall, but sent the servant into the shaft without informing him of the danger. The servant was inexperienced in the business, and was not aware of the peril. The complaint alleged these facts, and also that the master was negligent in not properly securing and curbing the sides of the shaft. The master was held liable to respond in damages for the injury thus received by his servant, because the latter was not informed of the danger of the employment, and was not negligent. Had the servant been fully informed of such danger, it is clear that under the above rule he could not have recovered, even though he might have proved that the sides of the shaft were not properly secured, or that it was not curbed in a safe manner, according to the usual custom, and that his injuries resulted therefrom.

It follows from the rule above stated, that, if the present plaintiff was fully informed of the peril of doing his work in the manner in which it was required to be done by the defendant's agent, Mr. Brown, it is immaterial that there was a customary, better and safer way in which the work might have been done, which, had it been done in that way, would have relieved the plaintiff from peril and avoided the injury. This is all that need be said concerning the rulings of the learned circuit judge rejecting testimony offered on behalf of the plaintiff to show that the work might reasonably have been so conducted as to have avoided the injury, or that it was the custom so to carry on such work.

The question only remains, Does the undisputed evidence clearly and satisfactorily prove that the plaintiff, before and at the time he was injured, was fully informed of the peril to himself of the service in which he was engaged? We think the question must be answered in the affirmative. The plaintiff is, presumably, a man of ordinary intelligence. He was cognizant of the practical effects of the law of gravitation, and knew that when a bank of earth is undermined by removing

its foundation, it is liable to fall. Such knowledge is not con-fined to experts. No one knew better than himself the extent to which the bank that fell upon him had been undermined, or could better judge of the peril. Many of his fellow-laborers in the gravel pit comprehended the peril, and left or avoided the place where the plaintiff was injured. Twenty or thirty minutes before the bank fell, Mr. Brown notified the plaintiff and others that the place looked dangerous, and cautioned them to be careful. The plaintiff was not required to remain there. Others had left the place because of the apparent danger, and he might have done so. Yet he continued his work there, constantly increasing the depth of the excavation, and with it the danger that the bank would fall, until it did fall upon him.

These facts are established by the undisputed evidence in the case, and it follows therefrom that the circuit court prop-erly nonsuited the plaintiff.

*By the Court.*— Judgment affirmed.