SCHADEWALD, Administrator, vs. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY.

*September 23 — October 10, 1882.*

*(1) Negligence: Evidence. (2) Damages for death.*

1. The evidence in this case is *held* not to show any negligence on the part of the railway company which would render it liable for the death of the plaintiff's intestate.
2. In an action to recover damages in respect of the death of a person caused by the wrongful act or neglect of another, if the widow survive the deceased, the damages sustained by her alone are all that can be recovered under the statute.

APPEAL from the Circuit Court for *Manitowoc* County. This action was brought under the statute (R. S., 1020, secs. 4255, 4256) to recover damages for the alleged negligence of the defendant railway company, which caused the death of the plaintiff's intestate, Charles W. C. Zibell. The plaintiff had a verdict for $3,500, and the defendant company has appealed from the judgment rendered pursuant thereto.

The material facts, stated as strongly for the plaintiff as the testimony will warrant, are these: The railway of the defendant, extending westerly from the city of Manitowoc, crosses a ravine about one mile west of that city. This ravine is about two hundred and fifty feet wide, and from thirty to thirty-six feet deep from the railway track to the bottom thereof. Over twenty years ago an embankment of

earth was put into the ravine where the railway crosses, but not high enough for the track. The track was built upon piles driven into the embankment for that purpose. Four or five years before the accident complained of the company raised the embankment to the track, by dumping in earth from the track above. The piles were left standing, however, and the track still rested upon them. When completed the embankment was one hundred and ten feet wide at the bottom and fourteen feet at the top, with a uniform slope. A culvert was placed in the bottom of it, a little east of the center of the ravine, through which was discharged the water of a small stream running southerly and emptying into the Manitowoc river a short distance south of the railway. In April, 1881, by reason of unusually heavy rains, the culvert became obstructed and failed to discharge all of the water running in the stream. Consequently the waters rose upon the north side of the embankment. At this time one Jerry Donohue was the assistant superintendent, and one Charles Ramus was roadmaster of the defendant's railway, and the plaintiff's intestate was foreman of the section which included that portion of the railway constructed across the ravine. They had been in the service of the railway company in these respective capacities for several years. They ranked in authority in the order above named.

The conductor of a train which passed over the embankment on Saturday morning, April 23d, examined the embankment before running his train over it. He was ordered to do so by the train dispatcher at Manitowoc. This conductor found the embankment settled a little away from the ties (he does not say at what points), but regarded it safe to run his train over it because the track rested on the piles. He noticed no considerable accumulation of water above the embankment. On the next day another conductor examined the embankment and found the bank washed away on the upper side at the west end, but not to the track, and

the track was pushed out of line. The water was then within ten or twelve feet of the track. This conductor declined to cross the ravine with his train, which otherwise would have gone west from Manitowoc the next morning. The assistant superintendent, Donohue, also visited the place on Sunday, April 24th, and examined the embankment. He found the culvert partly open, and saw indications which satisfied him that the water above the railway was falling. He did not see Zibell, the plaintiff's intestate, on that day. Early on Monday morning, April 25th, Zibell went to Manitowoc and informed Donohue that the culvert was entirely stopped, and that he did not consider the embankment safe for the passage of trains. Donohue immediately went out to the ravine. Ramus, the roadmaster, reached there about the same time. They found a construction train with a gang of men on the west side of the ravine, under the charge of one Cohn, the conductor of the train. Donohue decided to relieve the pressure upon the embankment by digging a ditch at the east end, through the embankment, for the discharge of the water, and directed Ramus to have Cohn's men do it. Thereupon Ramus set about eighteen of those men — which was as many as could work there to advantage — to digging the ditch. It was dug close to the hard ground, which formed the east side of the ravine — within two feet of it. The water in the ravine was then about ten feet below the railway track. Donohue did not see Zibell after the latter reported to him at Manitowoc, but Zibell returned, crossed the ravine to where the construction train stood, then went back and worked in the ditch with Cohn's men. Ramus saw him at work, but gave him no direction to work there.

Soon after the men commenced digging the ditch Cohn observed that the sides of the bank were settling near the west end of the ravine; that it " would drop about every five or six minutes, may be, a couple of inches." He called

Donohue's attention to this indication. Soon after, the latter directed Cohn to have his men cave down the bank near the center of the bridge, to stop an apparent leakage at that point. The water bubbled up there, indicating that it was penetrating the embankment. Cohn executed the order, but thought it a dangerous place for his men. Donohue thought there was no danger. Cohn cautioned his men to be ready to escape should an alarm be given, and directed his brakeman to remove the tools from the bridge. A few moments later the water broke through the embankment, about one hundred feet west of the east end, and swept it away, leaving the piles and railway track standing. Cohn gave the alarm, and his men at work caving off the bank all escaped along the track to the west side of the ravine, as did also himself and his brakeman. Donohue described the break thus: "I was about the middle of the embankment, and I looked down and saw a body of earth move right out towards the river. It was clear down at the very base of the slope, moving out." At the same time he saw some men — he thinks two, but Ramus says there were three — running from the east, along the south side of the embankment, towards the break. He called to them to run the other way, when, his own peril appearing imminent, he escaped along the track to the west side of the ravine. Immediately before the break the yard-master of the defendant company at Manitowoc, and the boss carpenter, were on the embankment at the center, watching the settling of the embankment. Seeing that the water had got through, they ran for the east end, the yard-master giving an alarm. About the same time, Ramus, who was standing on the track, immediately over the ditch, saw that the water had got through, and gave the alarm, ordering the men to run for their lives. Most of them went upon the high ground at the east side of the ravine, which was easy of access and ascent from either end of the ditch, and all of them escaped to such high

ground except those who ran west. Of these, two were washed down by the water, but finally escaped. Ramus called to these men several times to run the other way. Zibell was seen by no witness after the men left the ditch, and his remains have not been found. The plaintiff's claim is that he was one of those who ran west from the ditch, was washed away with the others, and lost his life. The court submitted that question to the jury, and the jury must have found that he came to his death at that time. At the time of the break, the ditch was sunk to within two or three feet of the water, and there were sixteen or eighteen men at work therein.

For the appellant there was a brief by *Cottrill, Cary & Hanson,* and oral argument by *Mr. A. L. Cary.* They argued, among other things, that the undisputed evidence showed that Zibell actually had, or, under the circumstances, was chargeable with, knowledge of all the risks and dangers incident to the work of digging the ditch, or at least that his knowledge was equal to that of Donohue or Ramus; that he *voluntarily* went to work and assumed the hazards incident thereto; and that after the danger to the men in the ditch became imminent both Donohue and Ramus did all that was in their power to relieve the men and direct them to a place of safety. *Naylor v. C. & N. W. Railway Co.,* 53 Wis., 661; *Strahlendorf v. Rosenthal,* 30 id., 674; *Flannagan v. C. & N. W. Railway Co.,* 50 id., 462; *Steffen v. C. & N. W. Railway Co.,* 46 id., 259; *Sullivan v. India Manuf'g Co.,* 113 Mass., 396; *Ladd v. New Bedford Railroad Co.,* 119 id., 412; *Lovejoy v. B. & L. Railroad,* 125 id., 79; *Davis v. D. & M. Railway Co.,* 20 Mich., 105; *Railroad Co. v. Gildersleeve,* 33 id., 133; Cooley on Torts, 551–555; *Hayden v. Smithville Manuf'g Co.,* 29 Conn., 548; *Railroad Co. v. Austin,* 40 Mich., 247; 2 Thompson on Neg., 992, § 12, 1008, § 15, 1016, § 21; *Thayer v. Railroad Co.,* 22 Ind., 26; *Leonard v. Collins,* 70 N. Y., 90; *Gibson v. Erie Railway Co.,* 63

id., 449; *Railroad Co. v. Simmons*, 14 Chi. Leg. News, 406.
It was error to permit the jury to consider the probable loss
to the children as well as to the widow of the deceased.
*Woodward v. C. & N. W. Railway Co.*, 23 Wis., 400. Don-
ohue and Ramus were fellow servants of Zibell. They were
working for the same master and at the time were engaged
in the same undertaking. If he met his death through their
negligence (of which, however, there was no evidence), the
defendant is not liable. *Howells v. Steel Co.*, 11 Moak's Eng.
R., 153; *Railway Co. v. Murphy*, 5 Am. R., 48; *Mann v.
Mill Co.*, 14 Am. Law Reg., 725; *Sherman v. Railway Co.*,
17 N. ﷽., 153; Moak's Underhill on Torts, 52–61, 692; *Rail-
road Co. v. Simmons*, 14 Chi. Leg. News, 406; *Howland v.
Railway Co.*, 54 Wis., 226.

For the respondent there was a brief by *Nash & Nash*
and *A. J. Schmitz*, and oral argument by *Mr. L. J. Nash*.
They contended, *inter alia:* 1. There was evidence of negli-
gence sufficient to go to the jury. *Strahlendorf v. Rosen-
thal*, 30 Wis., 674; *Wedgwood v. C. & N. W. Railway Co.*,
41 Wis., 478; *Connolly v. Poillon*, 41 Barb., 366; *Austin v.
Steamboat Co.*, 43 N. Y., 75; *Railway Co. v. Conroy*, 61 Ill.,
162; *C. & N. W. Railway Co. v. Sweet*, 45 id., 197; *Coombs
v. New Bedford Cordage Co.*, 102 Mass., 572; *O'Connor v.
Adams*, 120 id., 427; *Ryan v. Fowler*, 24 N. Y., 410; *Bax-
ter v. Roberts*, 44 Cal., 187; *Walsh v. Manuf'g Co.*, 110
Mass., 23; *Steele v. Burkhardt*, 104 id., 59; 2 Thompson on
Neg., 974, 979, 992; *Lalor v. C., B. & Q. Railroad Co.*, 52
Ill., 401; Shearm. & Redf. on Neg., secs. 36, 94; *Laning v.
N. Y. C. Railway Co.*, 49 N. Y., 521. 2. The instruction
to the jury relative to the measure of damages was not
erroneous. The action is only in form an action by the ad-
ministrator of the deceased person. In all other respects it
is to be regarded, and is governed by the same rules, as an
action brought directly by the beneficiaries themselves.
*Whiton v. C. & N. W. Railway Co.*, 21 Wis., 305; *Potter v.*

*C. & N. W. Railway Co.*, id., 372; *Woodward v. C. & N. W. Railway Co.*, 23 id., 400; *Regan v. C., M. & St. P. Railway Co.*, 51 id., 599; *Ewen v. C. & N. W. Railway Co.*, 38 id., 626. It follows that the objection that the complaint has improperly joined the children as beneficiaries, and has improperly joined two or more causes of action, was waived because taken neither by demurrer nor answer. R. S., sec. 2659, subd. 4, 5; Id., secs. 2653–4. In this case, though the nature of the recovery sought was distinctly stated in the complaint, no objection to the rule of damages stated in the instruction was taken in the court below, save by an exception filed without notice to the plaintiff. Nor was the error, if any, in the instruction made one of the grounds of the motion for a new trial. That a general demurrer does not reach defects of parties nor misjoinder of causes of action, and that a general denial waives these objections, see *Morrow v. Lawrence University*, 7 Wis., 574; *Cary v. Wheeler*, 14 id., 281; *Jessup v. City Bank*, id., 331; *Stillwell v. Kellogg*, id., 461; *Mead v. Bagnall*, 15 id., 156; *Faesi v. Goetz*, id., 231; *Hackett v. Bonnell*, 16 id., 471; *Jones v. Hughes*, id., 683; *Kimball v. Noyes*, 17 id., 695; *Burhop v. Milwaukee*, 18 id., 431; *Robins v. Deverill*, 20 id., 142; *Baird v. McConkey*, id., 297. The motion for a new trial was a waiver of all exceptions not therein specified. *Nisbit v. Gill*, 38 Wis., 657; *Cohn v. Stewart*, 41 id., 527; *Wells v. Perkins*, 43 id., 163; *Meno v. Hoeffel*, 46 id., 282; *Barkow v. Sanger*, 47 id., 500; *Pettit v. Hamlyn*, 42 id., 434; *Mayor v. Hamilton Fire Ins. Co.*, 10 Bosw., 537; *Cumings v. Morris*, 3 id., 560; *Philbin v. Patrick*, 6 Abb. Pr. (N. S.), 284; *Rigney v. Savory*, id., 284, note; *Russell v. Duflon*, 4 Lans., 399; *Steinman v. Tolivar*, 13 Mo., 590; *Gales v. Shipp*, 2 Bibb, 241. The defendant's failure to object to the evidence in so far as it was intended to prove injuries sustained by the children was a waiver of the objection that they were not beneficiaries of the action. *Tomlinson v. Wallace*, 16 Wis., 224; *Buffalo R.*

*R. Co. v. Brainard*, 9 N. Y., 100; *Levin v. Russel*, 42 id., 251. That the instruction was actually correct, see *Seaman v. Farmers' L. & T. Co.*, 15 Wis., 578; *Potter v. C. & N. W. Railway Co.*, 21 id., 372; *Woodward v. C. & N. W. Railway Co.*, 23 id., 400; *Castello v. Landwehr*, 28 id., 522; *Ewen v. C. & N. W. Railway Co.*, 38 id., 613; *Kelley v. C., M. & St. P. Railway Co.*, 50 id., 381; *Regan v. C., M. & St. P. Railway Co.*, 51 id., 599. 3. To the point that Donohue and Ramus were not fellow servants of Zibell, counsel cited: *Brabbits v. C. & N. W. Railway Co.*, 38 Wis., 289; *Shultz v. C., M. & St. P. Railway Co.*, 40 id., 589; *S. C.*, 48 id., 375; *Wedgwood v. C. & N. W. Railway Co.*, 41 id., 478; *S. C.*, 44 id., 44; *Bessex v. C. & N. W. Railway Co.*, 45 id., 477; *Flannagan v. C. & N. W. Railway Co.*, 50 id., 462; *Berg v. C., M. & St. P. Railway Co.*, id., 419; *Laning v. N. Y. C. Railway Co.*, 49 N. Y., 533; *Brickner v. N. Y. C. Railway Co.*, id., 672; *Flike v. B. & A. Railway Co.*, 53 id., 549; *Chamberlain v. M. & M. Railroad Co.*, 7 Wis., 425; *S. C.*, 11 id., 238; *Moseley v. Chamberlain*, 18 id., 700; *Cooper v. M. & P. du C. Railroad Co.*, 23 id., 668; *Stetler v. C. & N. W. Railway Co.*, 46 id., 497; *Chapman v. Erie Railway Co.*, 55 N. Y., 579; *Malone v. Hathaway*, 64 id., 5; *Besel v. N. Y. C. & H. R. Railway Co.*, 70 id., 171; *Booth v. B. & A. Railway Co.*, 73 id., 38; *Railroad Co. v. Fort*, 17 Wall., 553; *L. & N. Railway v. Collins*, 2 Duv. (Ky.), 114; *C. & N. W. Railway v. Bayfield*, 37 Mich., 205; *Lalor v. C., B. & Q. Railroad Co.*, 52 Ill., 401; Thompson on Neg., 1028–1031; *Miller v. U. P. Railway*, 12 Fed. Rep., 600; 13 Cent. L. J., 407.

LYON, J. It is obvious that neither of the facts (if either is a fact), that the culvert in the bottom of the ravine, through the embankment, was too small, or that the ditch which was being made to relieve the pressure of water against the embankment was not cut in the proper place, furnishes ground

of recovery in this action. The plaintiff's intestate was specially charged by his employment to look after this portion of the railway, and is presumed to know — doubtless did know — its condition on the morning of April 25th, and the probable results of cutting a ditch through the embankment at the east end, as well as, and perhaps better than, any other person. Hence, conceding that he was in the line of his duty when he voluntarily went to work in the ditch, because he knew all the dangers of the employment which were then apparent to any one he took upon himself the risk of those dangers. *Naylor v. C. & N. W. Railway Co.*, 53 Wis., 661; *Howland v. M., L. S. & W. Railway Co.*, 54 Wis., 226. If the defendant company is liable at all in this action, it is because Donohue, the assistant superintendent of its railway, who was there in charge of operations, failed to notify the deceased of the facts communicated to him by Cohn concerning the settling of the sides of the embankment, and the further fact that there was a bubbling of the water in the center, indicating a leakage there, and, perhaps, an early break. The testimony does not tend to show any other fact upon which a charge of negligence can be predicated against the defendant. Cohn was working his men at the west end of the bridge when he observed the settling of the bank which he communicated to Donohue. The bank had fallen considerably on Sunday, April 24th, and when the deceased went over it on the morning of the 25th it had fallen so that the ends of the ties projected, and the stringers upon which they rested were visible. The bank had settled during the night. All this the deceased knew, or must be presumed to have known, for he had opportunity to know it, and it was his duty to know it. There is little or no evidence tending to show that the bank settled much more rapidly after the men went to work digging the ditch than it did before, or, at least, that Donohue had any knowledge that it was settling materially faster until the break occurred. Besides, the

point of Cohn's observations thus communicated to him was two hundred and fifty feet distant from where the deceased was at work. But conceding that the facts communicated by Cohn, and the appearance of the water near the center of the embankment, indicated that the water would (as it did) soon force a passage through the embankment at that point, it by no means follows that Donohue was negligent in failing to notify the deceased of those facts. We find nothing in the testimony tending to show that there was any reasonable ground to apprehend that the breaking of the water through the embankment where those indications of a break were discovered (which at the nearest point was one hundred feet or more from the ditch), would put in jeopardy the men at work in the ditch; or, at least, not until after they would have ample time to go upon the adjacent high ground. Before the place where the ditch was being dug could become involved, an hundred feet or more of earth in length, thirty to thirty-six feet in height, and one hundred and ten feet wide at the bottom, sloping to fourteen feet at the top, had to be washed out, and the process would be retarded by the piles driven at short intervals in the old embankment, and reaching up to the road-bed.

Under these circumstances, we do not think it was negligence that Donohue failed to notify the men in the ditch that the sides of the embankment at the west end were settling two inches every five or six minutes, and that in the center the water bubbled up in a manner which indicated that it was working through the embankment and might break through at any moment. We perceive nothing in the case which made it the duty of Donohue, in the exercise of reasonable caution and prudence, to give such notice. Working within less than a pace of the solid bank of the ravine, which they could easily go upon and ascend in a few seconds out of the reach of possible danger, and all reasonable probabilities being that they were in no imminent or even prob-

able danger, to hold that such a notice was required to be given to these men would be holding the defendant to a degree of caution not required by the law. We have considered the question of negligence on the assumption that the defendant company is responsible for the negligence of Donohue, who represented it and stood in its place at the time of the accident. The views above expressed render it unnecessary definitely to determine that proposition. Ramus, the roadmaster, was subordinate to Donohue, and acted under his orders. His relation to the deceased was undoubtedly that of a co-employee. If the power and authority of the company was invested in any one on the occasion in question, it was in Donohue and not in Ramus. We have also assumed, for the purposes of the case, that the deceased was free from negligence contributing to his death. A motion for a new trial, on the ground (among others) that the verdict was against the evidence, was denied. For the reasons above stated we think it should have been granted. The plaintiff claimed in his complaint for damages to the widow *and children* of the deceased resulting from his death, and the jury were instructed that such damages were recoverable in the action. This was error. Damages sustained by the widow alone are all that can be recovered under the statute.

The judgment must be reversed and the cause remanded for a new trial.

*By the Court.*— It is so ordered.