# JANUARY TERM.

## CHARLESTON.

OVERBY v. CHESAPEAKE & OHIO R'Y CO.

Submitted January 12, 1893.—Decided January 28, 1893.

1. DAMAGES—CONTRIBUTORY NEGLIGENCE.
   Where negligence is the ground of an action it rests upon the plaintiff to trace the fault of his injury to the defendant, and for this purpose he must show the circumstances under which the injury occurred; and if from these circumstances so proven by the plaintiff it appears that the fault was mutual, or, in other words, that contributory negligence is fairly imputable to him, he has, by proving the circumstances, disproved his right to recover, and on the plaintiff's evidence alone the jury should find for the defendant.   (p. 527.)

2. DAMAGES—CONTRIBUTORY NEGLIGENCE.
   The general rule in regard to contributory negligence is that, if the negligence be mutual on the part of the plaintiff and defendant, there can be no recovery.   (p. 530.)

3. DAMAGES—CONTRIBUTORY NEGLIGENCE—EMPLOYES.
   Where an employe of a railroad company receives an injury which is caused by his acting in direct violation of a reasonable rule made by said company for the safety of its servants, of which rule he has notice, and has promised to obey, he must be deemed

guilty of contributory negligence, and can not recover damages from the company for such injury.   (p. 534–537.)

4. MOTION TO STRIKE OUT EVIDENCE.

A motion to strike out the plaintiff's evidence will not be entertained after the defendant has given in his evidence, on the ground that it is insufficient to sustain the issue on the part of the plaintiff.   (p. 533.)

5. EVIDENCE—EXPERTS.

If the facts in a case can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form opinions in reference to them and draw inferences from them as witnesses, then the opinion or experts can not be received in evidence as to such facts.   (p. 532.)

6. EVIDENCE.

The opinion of a witness, who neither knows nor can know more about the subject-matter than the jury, and who must draw his deductions from facts already in the possession of the jury, is not admissible.   (p. 532.)

7. EVIDENCE—EXPERTS.

When the inquiry relates to a subject which does not require peculiar habits of study in order to enable a man to understand it, the opinion of skilled witnesses is not admissible.   (p. 532.)

SIMMS & ENSLOW for plaintiff in error cited 31 W Va. 142. p't 1, Syll.; 27 W. Va. 285, p't 8, Syll.; 33 W. Va. 135; 34 W. Va. 509; Id. 657; 53 Wis. 661; 28 Minn. 128; 63 N. Y. 449; 67 Mich. 61; 69 Mo. 32; 101 N. Y. 520; 94 Pa. St. 102; 55 Tex. 110; 83 Ind. 191; 57 Cal. 15; 114 Ill. 244; 32 Mich. 411; 83 Va. 295; 122 U. S. 195; 78 Va. 709; Whar. Neg. (2d Ed.) §§ 213, 214; Cool. Torts 551, 552; Bea. Con. Neg. § 140; 111 Ind. 212; 69 Tex. 665; 55 Wis. 50; 33 Ohio St. 227; Id. 468; 34 W. Va. 500; 1 Shear. & Red. Neg. § 202; Rog. Ex. Tes. 26; 97 N. Y. 507, 513; 23 W. Va. 305, 306; 100 Pa. St. 266, 273; Rog. Ex. Tes. § 20; 30 Ia. 533; 31 Gratt. 200.

J. S. MARCUM and VINSON & McDONALD for defendant in error, cited 76 Pa. St. 389; 7 Hurl. & N. 937, 945; 100 U. S. 213; 31 Minn. 248; 29 Conn. 204; 48 Mich. 205; 63 Mo. 445; 73 N. Y. 585; 190 Mo. 673; 92 Mo. 440; 84 Va. 167; 31 W. Va. 142; Shear. & Red. Neg. § 215; 98 Mo. 62; 76 Wis. 120; 51 Mich. 276; 40 Mich. 423; 27 S. C. 456; Shear. & Red. Neg. (4th Ed.) § 213; 60 N. Y. 607; 29 Ia. 47; 8 Allen 441; 147 Mass. 448.

ENGLISH, PRESIDENT :

This was an action of trespass on the case, brought by Warren Overby against the Chesapeake & Ohio Railway Company on the 24th day of August, 1889, in the Circuit Court of Cabell county, to recover damages for an injury received while in the service of said company, which resulted in the loss of a portion of his right hand. The declaration was demurred to, the demurrer was overruled, issue was joined upon the plea of not guilty, and on the 20th day of March, 1890, the case was submitted to a jury, and resulted in a verdict for the plaintiff of five thousand dollars. This verdict was, on motion of the defendant, set aside, and a new trial awarded, and on the 8th day of December, 1890, the case was again submitted to a jury, who found a verdict for the plaintiff for two thousand five hundred dollars. A motion was made to set this verdict aside on the ground that the same was contrary to the law and evidence, which motion was overruled, and judgment was rendered against the defendant upon said last named verdict. The defendant excepted, and tendered its bill of exceptions, in which the evidence adduced in the case is fully set forth, and the material facts are as follows:

On the 5th day of December, 1888, the plaintiff, Warren Overby, was employed by the defendant as an engineer, and was running what is known as a "yard engine" at the city of Huntington, and had been in the employ of the defendant about four years. He had, however, been running an engine for the defendant about three months, most of the time in the roundhouse yard, and about the engine works, and on the depot yard. In said depot yard the defendant had stretched two semaphore wires between the main track and a side track, which the plaintiff avers in his declaration were three inches from the ground and four inches apart, which wire had been in that position for about three months before the accident; and the plaintiff, in his testimony, states that he noticed them soon after they were first put up there. About four o'clock in the morning of the 5th of December, 1888, he testifies that he noticed that his headlight was out on the tender; that he took a lighted torch, and proceeded to look for an extra globe on the en-

gine ; that he got off of the engine to see if Fox had a head-light globe, but Fox did not have any, and he returned, and set his torch on the engine, and stepped back to see what kind of signals they were giving. There was a confusion of signals, and just as he got back some distance they gave the backing up signal, and started to back up, and he started to get on the engine between the north main line and the side track. The night was very dark, and the engine was running at the speed of about three miles an hour when the plaintiff's foot hung in the wire, and he fell with his hand on one of the rails, and the engine ran over it and crushed it.

The plaintiff, in reply to the question, "How often did you notice them ?" (meaning the wires) answered : "I noticed them in passing them, I could not say how often;" that he could see them in the daytime from his engine. They were right by the north main line. The plaintiff also states in his testimony, when asked, "If the engine had not been moving, would it have cut your hand off ?" "No sir; nor if the wires had not been there it would not have cut my hand off either."

A receipt, signed by the plaintiff, in the following words and figures, was also offered in evidence : "Receipt for time card, rules, and regulations. Received September 15th, 1885, of the Chesapeake and Ohio Railway, a copy of time table No. 27, dated Sept. 16th, 1888, containing conditions of employment, and rules governing its employes all of which I promise to read carefully, and to comply with their stipulations." Rule No. 142 in the time table as receipted for was also read in evidence, and is in the following words :

"Every employe is required to exercise the utmost care to avoid injury to himsef or his fellow employes, and specially in switching or other movements of cars and trains. In coupling cars a stick should always be used to guide the link whenever it is possible to make the coupling in this way, and yard master, switchman, brakeman, or other employe who may be expected to couple cars should provide himself with and keep at all times a stick for that purpose. A supply of these sticks is always kept at divisional head-

quarters. Jumping on or off trains or engines when in motion, entering between cars, when in motion, to uncouple them, and all such imprudences, are dangerous, and in violation of the rules of this company."

The plaintiff's hand was crushed by the wheels of the moving engine, and it is manifest that, if the car had been stationary, the injury would not have resulted. The wire might have caused him to stumble and fall, but his hand would not have been crushed by the wheel.

The evidence discloses that the night was very dark, and that the plaintiff, leaving his engine in charge of the fireman, took his torch, and went in search of a globe for his headlight; that he returned and placed his torch on the engine, which was then standing still, and passed back over these wires, in order that he might see what kind of signals they were giving. He knew of the existence of these wires, as is shown by his testimony, and by his statements made in Richmond, in which he says he had fallen over them in the daytime, he thought, and he knew of others who had fallen over them, and he knew they were dangerous.

This Court held in the case of *Hoffman* v. *Dickinson,* 31 W. Va. 142 (6 S. E. Rep. 53) p't 9 of Syllabus: "If the master has been guilty of negligence in failing to procure suitable appliances or machinery for carrying on his business, and injury results therefrom to his servant, he must respond in damages, unless the servant, well knowing the default in this respect, enters upon the employment, or continues therein after such knowledge;" * * * "in such case he assumes the increased risk, and can not hold the master responsible for the consequences."

The evidence in the case leaves no room for doubt upon the question as to whether the plaintiff had knowledge of the existence of these wires, their locality, and the manner in which they were stretched between the tracks.

It is true that in 1 Shear. & R. Neg, § 213, the author says: "In analogy to the principles already stated under the head of 'contributory negligence,' the servant's rights are not prejudiced by his forgetfulness of or failure to observe a defect under the influence of sudden alarm, or of an

urgent demand for speed, or if his duties are such as necessarily to absorb his whole attention, leaving him no reasonable opportunity to look for defects."

Yet in this case it must be remembered that the night was dark, and the plaintiff had left the torch he had been carrying upon the engine, and crossed over these wires, without any light of any character, for the purpose of observing the signals; and, after he had satisfied himself upon this point, he was returning to his engine, which was moving at the rate of three or four miles an hour, for the purpose of getting on said moving engine, in direct violation of rule No. 142, which he does not pretend to have forgotten.

There was no sudden alarm, or urgent demand for speed, nor were his duties at that time such as necessarily to absorb his whole attention, leaving him no opportunity to look for defects. The plaintiff had, however, deprived himself of the means of seeing these wires, by leaving his engine, and going abroad in the dark without lantern, torch, or light of any description; and his failure to see them can not be attributed to any preoccupation or alarm, but to his own want of care in traveling over ground that he knew to be dangerous without the means of seeing where he was going.

In the cases of *Plank* v. *Railroad Co.*, 60 N. Y. 607; *Greenleaf* v. *Railway Co.*, 29 Iowa, 47; *Snow* v. *Railroad Co.*, 8 Allen, 441; and *Kelly* v. *Blackstone*, 147 Mass. 448 (18 N. E. Rep. 217)—cited by counsel for the defendant in error, the facts and circumstances were very different from those in the case under consideration. In three of them the party injured was engaged in coupling cars, which required his entire attention, but in the case at bar the attention of the plaintiff was only occupied in an effort to get on his engine while in motion, in direct violation of rule No. 142, with which he had agreed to comply.

No one can doubt the propriety and necessity of establishing rules and regulations for the management and safety of employes, when powerful and ponderous machines like railroad engines are moved by steam and manipulated by men. A strict and rigid compliance with such rules, which

are usually the result of years of experieace, must be regarded as conducive to the safety of life and limb, and the history of railroad accidents discloses the fact that few, if any, of the rules established for this purpose are more salutary in their effects than that portion of rule 142 which was read in evidence in this case, and prohibits the employe from getting on or off of trains or engines when in motion.

In this case the plaintiff was tripped by the exposed wires, and his fall was thereby occasioned; but his hand was not injured by the wires, and it would not have been injured but for the moving engine he was trying to get on. If his fall had been occasioned by a log, or a box covering said wire, or any other obstruction, the result would have been the same.

It is, however, contended that the wires being exposed constituted negligence on the part of the defendant. In the case of *Sweeney* v. *Envelope Co.*, 101 N. Y. 524 (5 N. E. Rep. 358) DANFORTH, J., says, in delivering the opinion of the court: "The general rule is that the servant accepts the service subject to the risks incidental to it, and, where the machinery and implements of the employer's business are at the time of a certain kind or condition, and the servant knows it, he can make no claim upon the master to furnish other or different safeguards." In the syllabus of the same case the court propounds the law as follows: "A servant accepts service subject to the risks incident to it, and where, when he enters into the employment, the machinery and implements used in the master's business are of a certain kind or condition, and the servant knows it, he voluntarily takes the risk resulting from their use, and can make no claim upon the master to furnish other or different safeguards."

Patterson on Railway Accident Law (page 343, § 316) says: "There is no implied obligation upon the part of the master to indemnify the servant against the ordinary risks of the service, and the servant, when injured, can only recover upon proof that the master knew of a danger which was unknown to the servant, and which the master did not make known to him."

It was also held in the case of *Sykes* v. *Packer*, 99 Pa. St.

465, that "an employer does not impliedly guaranty the absolute safety of his employes. In accepting an employment the latter is assumed to have notice of all patent risks incidental thereto, or of which he is informed, or of which it is his duty to inform himself, and is further assumed to undertake to run such risks." See *Clark* v. *Railroad Co.*, 28 Minn. 128 (9 N. W. Rep. 581); also, *Naylor* v. *Railway Co.*, 53 Wis. 661 (11 N. W. Rep. 24) where it is held that, "if a servant, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he can not maintain an action against the master for such injury merely on the ground that there was a safer mode of conducting the business, the adoption of which would have prevented the injury."

In the case of *Clark* v. *Railroad Co., supra*, Clark was knocked off of the cars by a projecting roof, and hurt. He had notice that the roof was in dangerous proximity to the track when he went into the service, and stated in his testimony that he knew the roof was there, but did not think of it at the time, and the court said: "The accident, so far as the evidence discloses, was the result of inattention to a known peril on the part of the deceased. Having entered the service with full knowledge of its existence and nature, he must be held to have taken the risk of injury from it on himself, and to have waived any obligation on the part of the defendant, so far as he was concerned, either to remove the peril, or to respond in damages for injuries from it."

So, also, in the case of *Gibson* v. *Railway Co.*, 63 N. Y. 449, it was held: "If a servant accepts service with knowledge of the character and position of structures from which employes that the court erred in allowing Frank Conover to answer plaintiff's question as to the usual way signal wires are placed on the lines of railroad; also as to the hypothetical question asked the witness as to whether wires placed as therein stated were reasonably safe. This witness stated that he had four years and four months' experience in railroading, part of the time as fireman and hostler, and that he had run a switch engine for four months, and that he had examined wires of this description on about seven different roads. He is then asked to state the usual

way of constructing the switch wires, which question was objected to, and the objection overruled by the court, and by his answer it appears that they are constructed in different ways; some are run through a pipe, and the pipe is beneath the ground, sometimes two feet or two and one half feet high; in some places they come out where they are to be used, and run up a pole; and some are covered by boxes.

This answer would indicate that there was no uniform way of constructing these wires. This witness was asked to speak as an expert, however, and give his opinion as to whether wires constructed as these were could be regarded as reasonably safe to those who work about them. He had shown by his testimony that he had never put up such wires, that he had never repaired them, but had seen them while they were being put up, and noticed how it was done.

On this question, Rogers on Expert Testimony (page 26) says: "If the facts can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form opinions in reference to them and draw inferences from them as witnesses, then the opinions of experts can not be received in evidence. * * * The opinion of a witness who neither knows nor can know more about the subject-matter than the jury, and who must draw his deductions from facts already in the possession of the jury, is not admissible."

In the case of *Welch* v. *Insurance Co.*, 23 W. Va. 306, Judge Green, in delivering the opinion of the Court, says: "But Starkey lays it down further that when the inquiry relates to a subject which does not require peculiar habits of study in order to enable a man to understand it, the opinion of skilled witnesses is not admissible; and he is unquestionably right in this position."

Now, so far as the testimony of this witness discloses, he never saw wires constructed just as these were, and if he had seen them a thousand times I can not perceive that he would be any better prepared to pass upon the question as to their safety than any other individual of common sense who had seen them, or than a juryman who had a right to go

and view them, or have them described to him.  It required no man acquainted with the intricacies of art or science to reveal any hidden mystery connected with these wires to give an opinion as to their safety, and I therefore think it was error to allow said witness to testify as an expert in reference thereto.

The fourth assignment of error raises a question as to the propriety of the action of the court in refusing to strike out the plaintiff's evidence on motion of the defendant.  This question, however, has been settled by this Court in the case of *Carrico* v. *Railway Co.*, 35 W. Va. 389 (14 S. E. Rep. 12) (second point of syllabus) where it is held: "After the defendant has given in his own evidence, a motion to strike out all the evidence on the ground that it is insufficient to sustain the issue on the part of the plaintiff should not be granted;" and this, we believe, correctly states the rule of practice.

The fifth assignment of error is to the action of the court in giving plaintiff's instruction No. 7, which reads as follows: "(7) The court instructs the jury that rule No. 141, as put in by the plaintiff, so far as it attempts to screen the defendant from liability to its employes by reason of injuries to such employes resulting from the negligence of the defendant without fault of the plaintiff, is null and void, and can not be relied upon as a defence to this action."

Rule No. 141, referred to in said instruction, reads as follows: "(141) The condition of employment on this road is that the regular compensation paid for services of employes shall cover all risks incurred, and liability to accidents from any cause whatever, while in the service of the company. If any employe is disabled by accident or other cause, the right to claim compensation for injuries will not be recognized.  The fact of remaining in the service of the company will be considered as agreeing to these conditions.  All officers employing men to work on this road will have these conditions distinctly understood and agreed to by each employe before he enters the service of the company."

If rule No. 141, above quoted, had been offered in evidence by the defendant, the plaintiff might well have asked instruction No. 7 ; but when the defendant had not offered

said rule, and was seeking in no way to screen itself under its provisions from any liability, I do not think the plaintiff should have been allowed to offer said rule as evidence before the jury, and then to obtain an instruction declaring it a nullity; it would be simply allowing the plaintiff to raise an issue, and have it determined by the court, in which the defendant had no participation; it would be outside the pleadings or evidence offered by the defence, and should be regarded as irrelevant.

The sixth assignment of error is as to the propriety of instruction No. 8, which was given to the jury at the instance of the plaintiff, and reads as follows: "(8) The court instructs the jury that if they believe from the evidence in this cause that there was a rule of the defendant prohibiting its employes from getting on and off moving trains, and that the plaintiff disobeyed that rule, that disobedience of the rule by the plaintiff will not of itself defeat the plaintiff's right to recover, unless it further appears from the evidence in this case that the disobedience of said rule was the proximate cause of the injury complained of."

I do not regard this instruction as erroneous, for the reason that, notwithstanding the fact that the plaintiff, at the time he received his injury, was acting in violation of one of the rules of the company, provided for his safety, yet it must appear that the disobedience of such rule was the proximate cause of his injury.

The seventh assignment of error is to the action of the court in refusing to give to the jury the defendant's instructions marked 2, 3, 4, and 5, and as to the action of the court in modifying the same as requested by plaintiff, and giving them, as modified, to the jury, against the defendant's objection and exception. Said instruction asked, and the modification thereof as made by the court, read as follows:

"(2) The court instructs the jury that if they believe from the evidence that the plaintiff in engaging in the service of the company, agreed that he would not attempt to get on or off the engines or trains in motion, and that he did not comply with that agreement, but, in attempting to get on a moving train, in disobedience of the rules and his agreement, when he was not compelled by accident to

get on, he stumbled over the wires complained of, but that he would not have been hurt had the engine been standing still, then such an attempt to get on a moving engine was negligence, and the plaintiff can not recover.

"(3) The court instructs the jury that the defendant, the Chesapeake & Ohio Railway Company, had a right to make a rule requiring their employes not to get on or off moving trains or engines, and if the jury find from the evidence that the plaintiff disobeyed such rule, and was injured while attempting to get on a moving engine, and that he was not compelled by sudden danger to jump on the engine, and would not have been hurt if the engine had been standing still, then the plaintiff can not recover, and the jury is directed to find for the defendant.

"(4) The court instructs the jury that getting on a moving engine when such action was voluntary, and could have been avoided, is of itself negligence, and if the jury believe that the plaintiff in attempting to get on an engine after night, while it was in motion, in violation of a rule of the company, fell and was hurt, but that he would not have been hurt had the engine been standing still, then they must find for the defendant.

"(5) If the jury believe from the evidence that the defendant had established a set of rules for the direction and regulation of its employes in the conduct of its business, and that plaintiff had agreed, when entering into the employment of the defendant, to obey the rules so made by the said defendant, and that said rules forbid and warn the employes not to jump on or off of trains or engines in motion, and that the plaintiff, in violation of said rule or warning, undertook to jump on an engine while in motion, stumbled and fell, and had his hand mashed or cut off by the engine while in motion, and that he would not have had his hand mashed or cut off by falling or stumbling over the wires complained of if his said engine had not been in motion, then the violation of said rule or warning was such proximate, contributory negligence on his part as prevents him from recovering any damages in this case from the defendant, and you should find for the defendant."

To the giving of all and each of said instructions the

plaintiff objected. The court overruled the objection to instruction No. 1, and gave it to the jury, to which ruling the plaintiff excepted, and the court gave the defendant's instruction marked 2, 3, 4, and 5, but in giving said instructions of defendant, marked 2, 3, 4, and 5, the court, at the request of the plaintiff, added a modification to defendant's instructions 2, 3, 4, and 5 in the following words and figures, viz.:

"Unless it should further appear to the jury from the evidence in this case that there was an established custom and usage of long standing of defendant's employes, known and acquiesced in by the defendant or its superior officers, to allow employes on defendant's trains to board and leave said trains and engines while the same were in motion, and if the jury believe from the evidence in this case 'that such custom or usage was known to the defendant or to its superior officers, and was acquiesced in by said defendant, then this custom and usage amounted to an abandonment of the rule to the extent of said custom and usages; and knowledge of this custom need not be shown by direct evidence, but may be inferred from circumstances, and implied from its long standing and notoriety."

These instructions, as they were asked for by the defendant, as I think, should have been given by the court without the modification, for the reason that they correctly propound the law. The modification appears to me to be improper, because, while there is evidence in the cause showing that the employes of the defendant were in the habit of getting on and off of the train and engines while the same were in motion, there is no evidence showing or tending to show that such conduct was acquiesced in by the defendant or its superior officers, or that the fact was known to them; and, even if the violation of said rule was shown to be so frequent that it might be inferred that the officers of the train had notice of the fact, they are possessed of no authority to waive or abandon the rule. It is a matter that the court will take cognizance of that conductors and engineers who manage the trains on our railroads have not the power or authority to make or unmake the rules for the control and management of the employes of the railroad

company; and, as we have seen by the authorities above cited, whenever an employe gets on or off of a moving engine or car he does so at his own risk, and, if he is injured, is chargeable with contributory negligence.

In the case of *Gerity's Adm'r* v. *Haley*, 29 W. Va. 98 (11 S. E. Rep. 901) this Court held: "Where negligence is the ground of an action, it rests upon the plaintiff to trace the fault of his injury to the defendant, and for this purpose he must show the circumstances under which the injury occurred; and if, from these circumstances, so proven by the plaintiff, it appears that the fault was mutual, or, in other words, that contributory negligence is fairly imputable to him, he has, by proving the circumstances, disproved his right to recover, and on the plaintiff's evidence alone the jury should find for the defendant."

See, also, *Currico* v. *Railway Co.*, 35 W. Va. 390 (14 S. E. Rep. 12) and seventh point of Syllabus, where this Court held: "The general rule in regard to contributory negligence is that, if the negligence be mutual on the part of plaintiff and defendant, there could be no recovery."

It appears from the evidence that the plaintiff, Overby, was the engineer in charge of the engine which crushed his hand, and while he was looking for the signals the fireman had taken his place, and, it is presumed, was moving the engine under his directions. The proximate cause of his injury was his attempt to board the moving engine. That he caught his foot against the wire was merely incidental. The same result might have followed if the wires had been boxed over, and he had stumbled over the box in the dark, or if his foot had slipped from the step in getting on the engine. But, even if it be conceded that the manner in which the wires were stretched caused the plaintiff's fall (and this is all that can be attributed to the wires) yet the fall did not crush his hand, but his action in approaching the moving car in the darkness, without a light of any description, caused the injury of which he complains, and, under the circumstances, he must be held to have contributed to his own injury, and, in our opinion, the court committed an error in overruling the defendant's motion to set aside the verdict and award it a new trial. For these reasons the

verdict must be set aside, a new trial awarded, and the cause remanded, with costs to the plaintiff in error.

REVERSED.    REMANDED.